[Civ. No. 1719.   Third Appellate District.—December 17, 1917.]

## HERMAN F. STRECKER, Appellant, v. A. GAUL, Respondent.

DAMAGES—TORTS—PROSPECTIVE PROFITS.—Under section 3333 of the Civil Code, defining the measure of damages for the breach of an obligation not arising from contract, prospective profits are allowable as damages for tort, but they must be clear, proximate, and the natural results of the wrong, and must be confined to the principal thing complained of and to its naturally attendant consequences.

ID.—FLOODING OF GROWING CROP—MEASURE OF DAMAGES.—In an action for damages to a growing crop of hay from an overflow caused by the wrongful obstruction of a natural water-way, the measure of damages is the market value of the crop at plaintiff's river landing at harvest time, less the cost of cutting, baling, and hauling the hay to the landing.

ID.—ABATEMENT OF NUISANCE AND DAMAGES—APPEAL—PART REVERSAL OF JUDGMENT.—In an action for the abatement of a nuisance and for damages to a growing crop of hay, the judgment abating the nuisance and awarding plaintiff nominal damages will not be wholly reversed on appeal from the order denying a new trial, where the appellate court finds that the trial court erroneously determined the evidence was insufficient to justify an award of substantial damages, but reversed as to the part awarding nominal damages with directions to make findings on that issue and to amend the judgment accordingly.

APPEAL from a judgment of the Superior Court of San Joaquin County.   Frank H. Smith and J. A. Plummer, Judges.

The facts are stated in the opinion of the court.

A. H. Ashley, for Appellant.

S. M. Spurrier, for Respondent.

CHIPMAN, P. J.—This action is brought by plaintiff for the abatement of a nuisance and judgment for damages caused by the erection of said nuisance.   The court found that the obstruction complained of constituted a nuisance and entered judgment for its abatement, but denied other than nominal damages of one dollar.   Plaintiff appeals from the

order denying his motion for a new trial and brings the record here upon bill of exceptions.

It appears that plaintiff was, at the commencement of the action, the owner of certain farming lands situated on Roberts Island, San Joaquin County, and that Johanna F. Krenz was the owner of adjacent lands which she had leased to defendant Gaul, who was, prior to and at the time of the action in possession and under full control thereof, and defendant admitted at the trial that he was solely and exclusively responsible for all the acts complained of in the complaint.

The course of the proceedings in this action was somewhat unusual and should be here stated. The complaint was filed March 21, 1908, and the answer June 3, 1908, and the action came on. for trial October 19, 1909, before the Honorable C. W. Norton, as judge, and the testimony was completed November 22, 1909. It was thereafter ordered to be submitted on briefs. Frank D. Nicol, Esq., was the attorney for defendant, in sole charge of the action for him, and the intervening death of Mr. Nicol halted further proceedings until January 6, 1913, when the condition of the case was brought to the attention of the court, and Messrs. Nutter & Orr, successors to Nicol & Orr, disclaimed any further employment in the case, and the cause was set for retrial on February 6, 1913. On February 11, 1913, A. L. Levinsky, Esq., was substituted as attorney for defendant and Honorable C. W. Norton, who presided as trial judge, being incapacitated by illness, on February 21, 1913, "a written stipulation for the submission of this cause for decision, signed by the attorneys for the plaintiff and the defendant A. Gaul, was filed herein. Thereby it was stipulated that this action be submitted for decision to the undersigned Judges Frank H. Smith and J. A. Plummer upon the pleadings; the record and files herein; and the evidence (including exhibits and stipulations) contained in, or identified by, the 239 page transcript of the evidence taken at said trial and thereafter transcribed by Court Reporter Edgar W. Butters (each party reserving and preserving all rights, objections, and exceptions as shown by said reporter's transcript); and upon. briefs in behalf of the respective parties. Said stipulation further provided that said judges might go upon and view the lands and premises involved, in such manner and with such aid as they deemed advisable, helpful, and just; and that said action should be

dismissed as to the defendants sued herein by the fictitious names of Mary Moe and John Doe. The said two judges having gone upon and viewed said lands and premises, and considered the pleadings, records, and files herein, the reporter's transcript of said trial, the exhibits, and the briefs of the counsel for the respective parties, and the cause being submitted, the court now makes, upon the issues presented by the pleadings, the following findings of facts.'' The court found that at the times mentioned in the complaint there has been a natural way for seepage-water and rain-water to pass through the lands of the plaintiff and through the lands of Johanna F. Krenz, mentioned in the complaint, in a general northwesterly direction and through the lands controlled by the defendant Gaul. That said natural way of said seepage and rain-water so passing through the said lands of plaintiff and said lands controlled by defendant Gaul ''was, in its natural condition, sufficient to conduct and carry away nearly all of the seepage-waters and rain-waters that accumulated upon the lands of'' certain owners (mentioning lands of various owners as stated in the complaint), ''and the lands of plaintiff.'' That by said natural way and depression all of the said waters which so accumulated on said lands were naturally conducted and carried away from the lands of plaintiff except a small amount estimated at thirty-four acres, and was also conducted across a portion of the lands of said Johanna F. Krenz, ''and there remained until absorbed by the earth or evaporated.'' That by means of said natural way said seepage and rain waters were prevented from accumulating and remaining on, and from flooding, said lands of the plaintiff other than said thirty-four acres. ''That on March 22, 1907, and before the construction of the obstruction hereinafter mentioned, the San Joaquin River had so risen, and rain-water had so fallen, that seepage and rain waters naturally accumulated in, and were flowing through, said natural water-way (and were thereby being drained upon the lands of plaintiff into said natural way); and from said lands of plaintiff were naturally flowing and naturally being drained to and upon said land of said Johanna F. Krenz controlled by said Gaul.'' That on said day last mentioned defendant constructed and ever since has kept maintained upon the lands of said Johanna F. Krenz ''a dam or embankment across the bed and channel of said natural water-way, of suffi-

cient height to stop and obstruct the natural or any flow of said seepage or rain water in or through said natural water-way; and by the said embankment and dam, so constructed, kept, and maintained by said Gaul, the natural flow from said lands of plaintiff of said seepage and rain water in and through said natural water-way was stopped and obstructed," and was thereby "backed up, accumulated upon, and made to overflow and cover portions of plaintiff's lands in addition to and other than said thirty-four acres which was naturally, usually, and ordinarily overflowed and submerged by surface waters; that on the said portions of plaintiff's lands (shown by the evidence to be about sixty acres), other than said thirty-four acres, there was growing at such time, and there was, a valuable stand of clean growing oats and clean growing wheat; that by the said overflow, the said portions of plaintiff's lands, other than said thirty-four acres usually submerged, was so overflowed and kept wet for such a time and to such an extent that the said crop of oats and wheat growing on said portions of land were destroyed and damaged; that such damage to said growing crops was the direct and natural result of the said acts of said defendant Gaul . . . ; that thereby the plaintiff's said growing crop was damaged and thereby plaintiff sustained and sustains loss and damage; that the amount of plaintiff's said damage is (from a practical standpoint) unascertainable from the evidence; that is to say, it is absolutely impossible for this court to determine from the evidence the amount of such damages suffered by the plaintiff; that this court can only guess at the amount of such damage; that, while the plaintiff has been damaged, since the exact amount of the damages sustained by him is not definitely shown by the evidence, his damages must be found to be nominal." Further describing the situation at that time through the acts of the defendant, it was further found "that thereby the plaintiff was caused additional expense in harvesting on his own land his said crops of hay west of said natural water-way, and he was thereby prevented from handling said crops of hay west of said natural water-way with expedition, and thereby plaintiff sustained inconvenience, damage and discomfort; that the evidence does not show, and the court from the evidence is unable to find, the amount of such expense or damage."

Finding X is as follows: "That the keeping and maintenance of each of said two dams or embankments by the defendant Gaul across said natural water-way was and is a nuisance and obstruction to the free use by the plaintiff of, and interferes with, his said lands and with his comfortable and profitable use and enjoyment thereof; that such obstruction and interference have been, are, and will be, continuous, continuing, and against the will of the plaintiff, and will cause the plaintiff irreparable damage and irreparable injury, unless such nuisance be abated, or modified.

"That it is impossible from the evidence for the court to determine what was the height of the said two dams or embankments at the time of said trial, or at the time of the submission of this said cause; that in the view by the court of said dams, the same had apparently been washed down since the trial of this action in October and November, 1909; that the map (and the levels thereon) made by Engineer Henry B. Budd (a witness herein) satisfy the court that if said dams be so cut down that their height will be less than an elevation of twenty-four feet on said map, that a sufficient water-way will be afforded for such waters, and that said dams so reduced in height will not hold back upon the lands of plaintiff any waters which would, without the existence of said dams, find their way off over the lands of the defendant."

As conclusions of law, the court found that plaintiff was entitled to judgment that the said two dams mentioned in his complaint be abated to the extent that they be cut down below an altitude of not exceeding twenty-four feet above the datum plane used by the surveyor in drawing said map, to wit: Defendant's Exhibit No. 8. That plaintiff is entitled to recover from the defendant nominal damages in the sum of one dollar and his costs of suit, including the cost of the view of said lands by the court. That plaintiff is entitled to no other or further judgment herein. Judgment was accordingly entered.

Quoting from plaintiff's reply brief, we find: "The appellant attacks solely: 1. That portion of Finding VI . . . reading as follows: 'That the amount of plaintiff's said damage is (from a practical standpoint) unascertainable from the evidence; that is to say, it is absolutely impossible for this court to determine from the evidence, the amount of such

damages suffered by the plaintiff; that this court can only guess at the amount of such damage; that, while the plaintiff has been damaged, since the exact amount of the damages sustained by him is not definitely shown by the evidence, his damages must be found to be nominal'; 2. The last sentence of Finding VII . . . reading as follows: 'that the evidence does not show, and the court from the evidence is unable to find, the amount of such expense or damage.' 3. The implied finding that plaintiff was not (shown by the evidence to be) damaged as to 64.74 acres of hay crop and in the sum of $2,209.25.''

As the defendant does not appeal and as the foregoing presents the only objection to the findings, the controversy is reduced to the single question whether there is sufficient evidence in the record to have justified the court in making a definite finding as to the damages suffered by the plaintiff. We have carefully examined the transcript with the view of ascertaining the evidence therein found upon this point. The plaintiff testified that the dam erected by defendant caused the water to overflow about sixty acres of his land and which ''drowned and killed this grain of mine. I cut and baled the remainder of the crop from that field on each side of the road,'' referring to the lands adjacent to the overflowed land. He further testified: ''From this crop that was not drowned, I obtained an average of three and one-half tons per acre or a little better. I consider the crop that was drowned was on the best land I have. It was better soil than that where the crop was not drowned for these same character of crops. That drowned, was sown and cultivated by me in the same way as the other that I harvested. It was plowed, drilled in, harrowed—best attention given—like any farmer 'putting in' grain in good shape, just the same as the other. Prior to the time this water came upon it, it looked at least thirty-four per cent better to me than the balance that was not drowned. In May, if this hay had been cut and baled and hauled to the landing, it would have brought $12 to $13 a ton. To bale and cut it would probably cost about three dollars a ton; hauling it from the field to the landing would have cost about two bits a ton [a quarter of a dollar].'' Again, he testified: ''Speaking of my particular crop in 1907, that which was drowned out, was drowned out after Gaul's first

dam was put in. My grain was drowned and I got nothing from the grain that was drowned on the land . . . ''

A. C. Feck, a witness for defendant, testified: ''We cut hay commencing in May and harvest grain later on. We never harvest in the month of March or April. I had no oat hay in 1907 and do not know the price of oat hay. Good wheat hay was worth from $10 to $12 a ton in 1907.''

Defendant Gaul testified: ''I am familiar with the average production of lands of the quality and character of plaintiff's in that neighborhood in hay. A good crop on the average under most favorable conditions is from two and one-half to three tons per acre. We harvest hay generally in the middle of May or the latter part. The market price of hay during the market season of 1907 in that neighborhood was from $10 to $12 after it was baled.''

There was no evidence of the value of the growing crop as it stood March 22, 1907. There was evidence that the land adjoining the overflowed land produced from three to three and one-half tons of oat and wheat hay per acre; that the overflowed land was, in fact, more productive than the adjacent land; that the crop had been put in by plaintiff in a proper way and by the same method in both the overflowed land and the land adjacent. Plaintiff testified that if the hay from this overflowed land had been cut in May, and baled and hauled to the landing, it would have brought $12 per ton, less three dollars for cutting and baling and twenty-five cents for hauling to the landing. There was no evidence as to any intervening cause between March 22d and May to affect the maturing of the crop except as caused by the further overflowing. The court found that the crop was destroyed through the acts of defendant. It also found that he was materially damaged thereby, but that the court could find no evidence in the record upon which the value of the crop destroyed could be definitely ascertained.

The measure of damages in cases of this character is found in section 3333 of the Civil Code, reading: ''For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.''

It was held in *Smith* v. *Los Angeles & Pacific Ry. Co.*, 98 Cal. 210–214, [33 Pac. 53] : ''The detriment must be 'proximately caused' by the breach; that is, it must be the efficient cause, the one that necessarily sets the other causes in operation.'' (See *Shoemaker* v. *Acker*, 116 Cal. 239–244, [48 Pac. 62].)

The findings leave no doubt that the detriment here shown was proximately caused by defendant's acts complained of.

Prospective profits are allowable as damages for tort, but they must be clear, proximate, and the natural results of the wrong, and must be confined to the principal thing complained of and to its naturally attendant consequences. (*Martin* v. *Deetz*, 102 Cal. 55–68, [41 Am. St. Rep. 151, 36 Pac. 368].)

''That which is the actual cause of the loss, whether operating directly, or by putting intervening agencies, the operation of which could not be reasonably avoided, in motion, by which the loss is produced, is the cause to which such loss should be attributed.'' (*Hawthorne* v. *Siegel*, 88 Cal. 159–167, [22 Am. St. Rep. 291, 25 Pac. 1114].)

The question of the measure of damages in cases of this class arose in *Teller* v. *Bay & River Dredging Co.*, 151 Cal. 209, 212, [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942]. It was there stated: ''The true measure of damage for the total destruction of a growing or standing crop is the value of the crop in the condition it was at the time and place of destruction.'' While the court states that this is the unquestioned rule, the court further stated: ''The question thus turns upon the mode of ascertaining the value of a growing crop at the time of its destruction. . . . The true rule in arriving at the value at the time of destruction is that laid down by the trial court and abundantly supported by authority,'' citing *Lester* v. *Highland Boy Gold Min. Co.*, 27 Utah, 470, [101 Am. St. Rep. 988, 1 Ann. Cas. 761, 76 Pac. 341], and in approval of the rule there laid down, the following is quoted from that case: ''In cases of destruction of growing crops it is proper and important to introduce and admit evidence showing the kind of crops the land is capable of producing, the kind of crops destroyed, the average yield per acre of each kind on the land not destroyed and on other similar lands in the immediate neighborhood, cultivated in like manner, the stage of growth of the crops, at the time of injury

or destruction, the expense of cultivating, harvesting and marketing the crops, and the market value at the time of maturity, or within a reasonable time after the injury or destruction of the crops. And while all such evidence may be considered by the jury in determining the amount of damages, if any, still the true measure of compensation is the value of the crops in the condition they were at the time of their injury or destruction." The court then cites *Shoemaker* v. *Acker,* 116 Cal. 239, [48 Pac. 62], and other authorities, stating that "the introduction of such evidence as the means of arriving at value is distinctly approved, and the same proposition is recognized as containing the true element for determining damage in *Ellis* v. *Tone,* 58 Cal. 289."

This question was considered to a considerable extent in this court in an opinion written by Justice Hart in *Dennis* v. *Crocker-Huffman Land & Water Co.,* 6 Cal. App. 58–65, [91 Pac. 425].

The detriment proximately caused by the tort in this case under the rule above stated is to be measured by the market value at plaintiff's landing on the San Joaquin River at harvest time. From the evidence already quoted, it appears without conflict that plaintiff properly seeded the land and that the crop had reached a stage justifying the attorney for defendant to state: "We will admit that the grain was in a fine condition." There remained therefore, to determine the cost of cutting, baling, and hauling the hay to plaintiff's landing. These items should be deducted from the market value of the hay at the landing, and the balance, after such deduction, would constitute the damages to which plaintiff was entitled.

We think there is ample evidence to have justified the court in finding as to the quantity of hay that would have been produced on the flooded land and its value at the plaintiff's landing—the market place.

We think, therefore, that the finding "that the amount of plaintiff's said damage is (from a practical standpoint) unascertainable from the evidence; that is to say, it is absolutely impossible for this court to determine from the evidence the amount of such damages suffered by the plaintiff," is not sustained, nor is the further finding "since the exact amount of the damages sustained by him is not definitely shown by the evidence, his damages must be found to be nominal."

We do not think it necessary that a new trial be ordered, as the evidence is sufficient and is uncontradicted from which findings may be made upon the question of plaintiff's damages. (*Riverton Ferry Co. v. McKeesport etc. Bridge Co.,* 179 Pa. St. 466–470, [36 Atl. 186].)

The judgment is affirmed in all respects except that portion adjudging the plaintiff to be entitled to nominal damages only, as to which the judgment is reversed. The cause is remanded, with directions to the court to make findings on the issue of damages in accordance with the rule in this opinion stated, and upon the evidence found in the record, and to amend the judgment in accordance with such findings.

Burnett, J., and Hart, J., concurred.