[Civ. No. 2003.   Third Appellate District.—August 16, 1919.]

## A. J. BARR, Respondent, v. MARTHA E. BRANSTETTER et al., Appellants.

[1] WATER AND WATER RIGHTS—PROCEEDING TO ENJOIN DIVERSION OF WATER—USE OF WORD "THEY"—SUFFICIENT DESIGNATION OF DEFENDANTS.—In this action to enjoin the defendants from diverting into a certain ditch more than a specified amount of water, the testimony of the plaintiff that "they" did the acts complained of was sufficient to justify the finding of the trial court that the "defendants" did such acts where no objection to the uncertainty of such testimony was made at the trial.

[2] ID.—AMOUNT OF WATER USED BY DEFENDANTS—TESTIMONY OF COUNTY SURVEYOR — FINDING.—Testimony of the county surveyor that he made surveys and measurements of the ditch on certain given dates and that the amount of water flowing in the ditch on the date in question was 121.3 inches, was sufficient to support the finding of the trial court that 121.3 inches of water was all that had been used by the defendants for the irrigation of their lands.

[3] ID.—AMOUNT OF LAND CULTIVATED—CONFLICTING EVIDENCE—FINDING.—Where the testimony as to the amount of land cultivated and irrigated by the defendants was conflicting, the trial court's finding in that regard must control.

[4] ID.—AWARD OF PRIOR RIGHT TO DEFENDANTS—AWARD TO PLAINTIFF NOT INJURIOUS.—The defendants could not have been prejudiced by a finding that plaintiff was the owner of and entitled to a given quantity of water where the court gave them the prior right to 121.3 inches of water, the amount plaintiff was awarded being subject to that right.

[5] ID.—CARRYING CAPACITY OF DITCH IMMATERIAL.—In such action, the court having found that the defendants were entitled to 121.3 inches of water only, that having been the amount used by them in the irrigation of their lands, the carrying capacity of the ditch in question was immaterial.

[6] ID.—TURNING IN OF ADDITIONAL WATER — OVERFLOW ON LOWER LANDS—EVIDENCE OF ADMISSIBLE.—In order to show that the defendants turned into the ditch more water than they had in previous years, the court properly permitted plaintiff to introduce testimony that subsequent to the alleged enlargement of the ditch across plaintiff's land, the ditch overflowed on the farm next below that of plaintiff and that defendants then had to widen the ditch across that farm, there having been other testimony showing that in former years the ditch across such lower farm had always carried the water that was turned into it and there had never been an overflow.

[7] ID.—APPLICATION TO STATE WATER COMMISSION TO DIVERT WATER —NOT ADMISSIBLE AS EVIDENCE.—An application by plaintiff to the state water commission to divert a given number of inches of water from the creek in question could not affect his title to a lesser amount to which he was theretofore entitled; nor did such application constitute an admission that he had no right to any of the water.

[8] ID.—DESTRUCTION OF CROPS—MEASURE OF DAMAGES.—The measure of damages for the destruction of growing crops is that laid down by section 3333 of the Civil Code, namely, "the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

[9] ID.—MEASURE OF WATER UNDER FOUR-INCH HEAD — AWARD CONTROLLING—DEFINITION OF MINER'S INCH.—Where plaintiff's surveyor (whose figures were accepted as correct by the court) made all his measurements "under a four-inch pressure," the court's award of a specified amount of water measured under that pressure must control, though it would be advisable, in such cases as this, that any reference to a miner's inch of water should be "one and one-half cubic feet of water per minute," as a miner's inch is defined by the law, without specifying any particular pressure under which it should be measured.

9. Meaning of "miner's inch" as used with respect to measurement of water, note, Ann. Cas. 1916B, 1235.

[10] ID.—MATERIAL ENLARGEMENTS — SUFFICIENCY OF — COMPLAINT.—
Where plaintiff alleged that the defendants threaten "to make en-
largements of said ditch" followed by statements as to the dam-
age that would result to him in case the enlargements were made,
the omission of the word "material" as qualifying the "enlarge-
ments" did not render the complaint insufficient.

[11] ID.—IRREPARABLE INJURY—SUFFICIENCY OF ALLEGATIONS.—In an
action to enjoin the defendants from diverting into a ditch more
than a specified amount of water, allegations that the overflowing
of plaintiff's land as a result thereof will render the same unfit
for cultivation and for raising crops because thereby they will be
made too wet for cultivation, that said land is agricultural land,
that plaintiff for ten years has cultivated said land and raised
crops of hay, fruit, and vegetables thereon, and that the land is
valuable for such purposes, are sufficient to show that the damage
which would probably result to plaintiff from the threatened acts
of the defendants would cause him irreparable injury.

APPEAL from a judgment of the Superior Court of
Siskiyou County. James F. Lodge, Judge. Affirmed.

The facts are stated in the opinion of the court.

Braynard & Kimball for Appellants.

Taylor & Tebbe and Henry McGuinness for Respondent.

HART, J.—Plaintiff brought the action to have defend-
ants enjoined from diverting into a certain ditch which
crossed plaintiff's lands more than 121 inches of water
measured under a four-inch pressure and from enlarging
said ditch. Judgment was entered in favor of plaintiff as
prayed for in the complaint, except that the amount of
water to which defendants were entitled was found to be
121.3 inches measured under a four-inch pressure. The
appeal is by defendants from said judgment.

It was alleged in the complaint, which was filed June 6,
1917, that plaintiff was the owner of eighty acres of land
(describing it) in Siskiyou County, upon which he raised
crops of hay, fruit, and vegetables; "that defendants
Martha E. Branstetter, Mary McKenzie, John B. Stuck,
and Philip Reed are the owners of a certain water ditch
which diverts the waters of Cold Creek to the amount of
121 inches measured under a four-inch pressure over and
across the said lands of plaintiff," which said ditch has been

used by defendants for diverting said 121 inches of water during the time plaintiff and his predecessors have owned the land; "that during the year last past, defendants disregarding plaintiff's rights have at times turned into said ditch where the same crosses the land of plaintiff more than 121 inches measured under a four-inch pressure of the waters of said Cold Creek and said waters have overflowed a large portion of plaintiff's lands to such an extent that said lands have been covered with water and have been rendered unfit for cultivation," to the damage of plaintiff in the sum of three hundred dollars.

Defendants filed an answer and cross-complaint in which they denied that any more than twenty-five acres of plaintiff's land was agricultural land or had been cultivated, and alleged that a portion of plaintiff's land was rocky and unfit for cultivation; denied the allegation of the complaint that the four defendants named therein "were limited to the amount of 121 inches" of water, but alleged that they were entitled to 272 miner's inches of water and to divert the same over plaintiff's lands by means of said ditch, and set up adverse possession thereto. Defendants denied the allegation of the complaint which stated that they had turned into the ditch more than 121 inches of water and had thereby overflowed plaintiff's land, but alleged that they were entitled to turn into said ditch 272 miner's inches of water.

The cross-complaint of defendants set up affirmatively the ownership by said defendants of certain lands and the ownership of said Cold Creek ditch and also their right to use 272 miner's inches of water on said lands, which are dry and practically useless without such water; "that the amount of water reasonably necessary for the proper irrigation and development of said lands of said defendants, during the irrigation season of every year, is the whole of the natural flow of said Cold Creek at the head of said Cold Creek ditch, to wit: 272 miner's inches of water"; that plaintiff's claims to divert waters are wholly without right and that during two years last past, "by means of dams, ditches, and other obstructions he has wrongfully, unlawfully, and without right diverted large quantities of water . . . and permitted his cattle to trample down and obstruct said Cold Creek ditch where said ditch crosses his

lands," thereby depriving said defendants of the use of said water, to their damage in the sum of three thousand dollars.

1. Appellants attack several findings of the court as not supported by the evidence, but an examination of the record has convinced us that there is no merit in the contention.

Findings 5, 6, and 7 are first referred to. They were to the effect that "defendants have turned into said Cold Creek ditch . . . more than 121.3 inches measured under a four-inch pressure, and thereby caused a portion of the lands of plaintiff . . . to be overflowed and covered with water"; that "defendants continued to turn" water into said ditch "in such quantities as to overflow plaintiff's lands and to damage the same and render said lands unfit for cultivation"; and that "plaintiff was damaged by the acts of defendants in the sum of one hundred dollars."

[1] The point made by appellant is that there is no evidence that *defendants* did the acts referred to in said findings. We think, though, that those findings derive sufficient support from the following testimony given by plaintiff: "The water was turned in on the fourteenth day of May, and I always cut the ditch—the head of the ditch was left open at the intake and the water came down and washed over my land; I cut the ditch in one place where it would run over the high ground and not do any damage down into the pasture so it wouldn't damage the property, and as they cleaned it out or repaired it in the spring when it was time to turn the water in, they always repaired the ditch. Well, it seems as though they turned the water in and didn't clean out the ditch, and I supposed they had their ditch in repair, and the water run there until the 24th of May."

It is true that the plaintiff did not in so many words say the *defendants* turned the water into the ditch. His language was that *they* did so. The allegation in the complaint, with which the court was, of course, familiar, was that "defendants . . . have at times turned into said ditch" water, etc. If the court or counsel had entertained any doubt as to whom the witness was referring by his answer, it is reasonable to suppose the uncertainty would have been cleared up at the time. But the defendants, at the trial, did not make the objection now urged, and it cannot be made for the first time in this court.

[2] It is next claimed that there is no evidence to support the finding that 121.3 inches of water is all that has been used by defendants for the irrigation of their lands.

On direct examination, plaintiff testified that no greater quantity than 121 inches of water ever did run through the ditch. It appeared on his cross-examination that he was not a civil engineer and that he had had no experience in measuring ditches or the flow of water, and appellants claim that his estimate was a mere guess and entitled to no credence. But the record shows that Harvey J. Sarter, the county surveyor of Siskiyou County, testified that he made surveys and measurements in June and September, 1917, and in April, 1918, and that the water flowing in the ditch on June 1, 1917, was 121.3 inches. This testimony is sufficient to support the finding, and in view of the testimony of the surveyor, it becomes immaterial whether plaintiff was or was not qualified to express an opinion upon the subject.

As to the finding that 121.3 inches of water was sufficient for defendants' use, appellants criticise the testimony of the plaintiff and of his witness, Henry B. Ream. It may be conceded that the testimony of these witnesses on this point was of little value. [3] The testimony as to the amount of land cultivated and irrigated by defendants was conflicting and the court's finding in that regard must control. There was received in evidence a table prepared by the United States Agricultural Weather Bureau showing how many acre-feet of water are considered necessary for irrigation of certain crops on various kinds of soil. Applying the amounts stated in this table to the requirements of defendants' lands, it appeared that 121.3 inches would be about double the necessary amount of water. It was alleged in the answer and cross-complaint that "at the time of the commencement of this action the said Cold Creek ditch was, and is, in first-class repair and order as an irrigation ditch." As seen, the action was commenced on June 6, 1917, and the testimony of the surveyor, Sarter, was that when he measured the ditch on June 1st it was full of water and overflowing at points.

Appellants next complain of the finding that the ditch across plaintiff's lands was enlarged so that its carrying capacity was doubled.

There was considerable testimony as to the ditch having been widened, the witnesses varying in their estimates as to the width from four to twenty-seven inches. Appellants claim that what they did was merely to clean out the ditch. C. R. Weigel, a witness for defendants, testified that after the ditch had been enlarged, and on June 19, 1917, he made measurements and found that the carrying capacity of the ditch across plaintiff's land was about 272 miner's inches of water. The witness Sarter testified that he found the water in the ditch to be as follows: On June 29, 1917, 162.29 miner's inches; on September 16, 1917, 164.55 miner's inches; on April 28, 1918, 131.47 miner's inches. Sarter testified that when he made these measurements the ditch was not full of water.

[4] As to the finding that plaintiff is the owner of and entitled to fourteen miner's inches of water, the plaintiff testified that about fourteen years prior to the trial he had constructed a ditch about two feet and eight or ten inches deep across the corner of his land for about six hundred feet; that he had used it every year since, and that when the creek was lowest the ditch contained about twenty-seven inches of water. We cannot perceive how defendants would be injured by the finding. The court gave to them the prior right to 121.3 inches and whatever amount was awarded to plaintiff was subject to that right.

[5] 2. Appellants claim that the court should have made a finding as to what the carrying capacity of the Cold Creek ditch was across the land of plaintiff.

In the cross-complaint it was alleged that the carrying capacity of the ditch was 272 miner's inches of water, and testimony was introduced tending to prove the allegation. It is contended that this was a material issue and should have been found upon. We think, however, that the carrying capacity of the ditch was not material. While it may have been capable of carrying 272 inches, the court found, upon what we regard as sufficient evidence, that defendants were entitled to 121.3 inches only, that being the amount that had been used by them for the irrigation of their lands. They were, therefore, confined to the use of that amount, regardless of what was the size of their ditch.

[6] 3. Over the objection of defendants, plaintiff was permitted to show that, on September 4, 1917, the Cold Creek ditch overflowed on the land of one Mose Zelle and that defendants widened the ditch through Zelle's land from six to eighteen inches for a distance of 413 feet. Zelle's land is the next farm below that of plaintiff and between the two tracts there is a fall or drop of about twenty feet. Respondent disclaims any right to damages by reason of the overflow of Zelle's land, but maintains that the testimony was pertinent to show that defendants had turned in so much more water than they had in former years that it could not be carried off Barr's place and into Zelle's without widening the ditch through Zelle's place.

The evidence was properly admitted. There was testimony showing that in former years the ditch through Zelle's land had always carried the water that was turned into it and there had never been an overflow. It is true that, on cross-examination, Zelle testified that, prior to the overflow, thirty or forty head of cattle had been pastured on the place and had trampled the ditch, but the damage done by the cattle could have been remedied without widening the ditch to the extent that it was widened. The inference seems irresistible that the widening of the ditch was for the purpose of accommodating the increased flow of water which Sarter testified he found in the ditch on September 16, 1917, twelve days after the overflowing of Zelle's land.

[7] 4. Defendants offered in evidence a certified copy of an application, filed by plaintiff with the state water commission in 1917, showing that construction work would be commenced about May 15, 1917, and that the notice of appropriation was posted before the commencement of the irrigation season of 1917, for the purpose of diverting forty miner's inches of water from Cold Creek. The document was offered as a declaration against interest. Plaintiff objected to its introduction as not being a declaration against interest and the court sustained the objection.

Appellants cite 16 Cyc. 954, as follows: "Conduct of a party inconsistent with his present contention may tend to show that the latter is an afterthought and proof of such contention is therefore competent as an admission," and contend that under that rule the offered evidence was improperly rejected. To this, respondent replies: "An applica-

tion for water cannot be construed as an admission that the plaintiff had no water right in Cold Creek. Any action of the commission would not affect existing rights and plaintiff or any other party could have a right to make an application for the surplus water of Cold Creek or any other creek.''

We agree with the position taken by respondent. It is established by the findings of the court that plaintiff was entitled to fourteen inches of the waters of the creek. His application for forty inches, or any other amount, could not affect his title to the fourteen inches. Nor was the application an admission that he had no right to any of the water. It was simply an attempt legally to secure, if he could, more water than he at that time had. The objection to the admission in evidence of the application was properly sustained.

[8] 5. The plaintiff testified that he had been damaged in the sum of three hundred dollars from the overflowing and swamping of his land. Appellants insist that the admission of said testimony was error and that the true measure of damages would be the fair rental value of the ground which was overflowed, citing *Crow* v. *San Joaquin etc. Irr. Co.*, 130 Cal. 309, at pages 314, 315, [62 Pac. 562, 1058]. That case was an action for damages arising from a breach of contract, and the supreme court stated that the measure of damages was the detriment caused by the breach, as provided in sections 3330 and 3333 of the Civil Code. The citation of section 3330 was probably an error, as there is no such section. It was probably intended to be section 3300, which prescribed the measure of damages for breach of contract. Section 3333 covers the breach of obligation other than contract and provides that it ''is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.''

In the cases of *Dennis* v. *Crocker-Huffman etc. Co.*, 6 Cal. App. 58, [91 Pac. 425], and *Strecker* v. *Gaul*, 35 Cal. App. 619, [170 Pac. 646], we held that the measure of damages for destruction of growing crops was that laid down by section 3333 of the Civil Code. While the testimony of the plaintiff was not as complete as it should have been as to the value of crops destroyed, he did testify as to po-

tato ground and pasture being rendered useless and alfalfa being "killed out" by the water. The court evidently considered his estimate of three hundred dollars damages as too high, for the judgment gave him one hundred dollars for this item.

[9]   6. Appellants contend that they "are entitled to a judgment giving them a measurement of their water under a six-inch head," while the court gave them 121.3 inches of water measure under a four-inch pressure.

Our statute defines a miner's inch of water as follows: "The standard miner's inch of water shall be equivalent or equal to one and one-half cubic feet of water per minute, measured through any aperture or orifice." (Stats. 1901, p. 660.)   Of this statute we had occasion to say, in *Lillis* v. *Silver Creek etc. Water Co.*, 32 Cal. App. 668, 674, [163 Pac. 1040, 1043]: "This makes the miner's inch equivalent to one-fortieth of a second-foot. Prior to the adoption of the above statute, an inch or miner's inch in this state was defined as the quantity of water passing through an orifice one inch square under a four-inch pressure, which would make the inch equivalent to one-fiftieth of a cubic foot per second."

In a work entitled, "The Theory and Practice of Surveying," by J. B. Johnson, the following is said regarding the miner's inch: "This is an arbitrary standard both as to method and as to volume of water discharged. It rests on the false assumption that the volume discharged is proportional to the area of the orifice under a constant head above the top of the orifice. Its use grew out of the necessities of frontier life in the mining west, and should now be discarded in favor of absolute units. The miner's inch is the quantity of water that will flow through an orifice one inch square, under a head of from four to twelve inches, according to geographical locality. . . . When the miner's inch can only be defined as a certain number of cubic feet per minute, it is evidently no longer of service and should be abandoned."

In Kinney on Irrigation and Water Rights, second edition, volume 2, section 890, it is said that in arriving at the quantity of water prescribed by the act of 1901 as constituting a miner's inch, "by computation the head of water must be under a six-inch pressure."

It will thus be observed that if the award to defendants had been 121.3 "miner's inches" of water, they would receive approximately fifty per cent more water than they would if the number of inches were measured under a four-inch pressure. But water users in the western states have long been accustomed to measuring their water under the old method, and it is a fixed and ascertainable quantity in California. The plaintiff's surveyor in the present case made all his measurements "under a four-inch pressure," and the court's award of that amount to defendants must control, though it is quite apparent that in such cases as this it would be advisable that any reference to a miner's inch of water should be "one and one-half cubic feet of water per minute," as a miner's inch is defined by the law, without specifying any particular pressure under which it should be measured.

[10] 7. It is finally contended that defendants' demurrer to the complaint should have been sustained for the following reasons: "1. There is no allegation in the complaint that the defendants threatened to make any *material* enlargement of the ditch on plaintiff's land; 2. There is no allegation showing how or why the overflow from the ditch on plaintiff's land would cause plaintiff irreparable injury."

As to the first point: The complaint contains "a statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc. sec. 426.) The allegation therein that defendants threaten "to make enlargements of said ditch" is followed by statements as to the damage which will result to plaintiff in case the enlargements are made which are sufficient to show that the damage would be serious. Inasmuch as the allegation is that such damage will flow from the "enlargements" previously mentioned, it would seem to be of no consequence that the word "material," as qualifying the "enlargements," should have been omitted.

[11] As to the second point, the appellants cite *City Store* v. *San Jose-Los Gatos etc. Co.,* 150 Cal. 277, 280, [88 Pac. 977, 978], and other cases, to the effect that "general allegations of irreparable injury are never sufficient—the facts must be stated from which it will appear that irreparable injury will probably follow."

The complaint before us contains sufficient allegations in this respect. It is therein stated that the overflowing of plaintiff's lands will render the same unfit for cultivation and for raising crops because thereby they will be made too wet for cultivation. In connection with the allegation that said land is agricultural land and that plaintiff for ten years has cultivated said land and raised crops of hay, fruit, and vegetables thereon and that the land is valuable for such purposes, nothing further, in our opinion, is required to show that the damage which would probably result to plaintiff from the threatened acts of the defendants would cause him irreparable injury. The demurrer to the complaint was properly overruled.

The judgment is affirmed.

Burnett, J., and Chipman, P. J., concurred.