[Civ. No. 8582.   Third Dist.   Apr. 19, 1955.]

HYDER KHAN, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

Devlin, Diepenbrock & Wulff for Appellant.

Nathaniel S. Colley for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment for damages and from two orders denying motions for judgment notwithstanding the verdict in an action brought under the Federal Employers Liability Act to recover damages for partial blindness allegedly caused by an industrial accident claimed to be due to appellant's negligence.

It is not disputed that respondent has lost the sight of his right eye due to a retinal detachment first observed about September 9, 1952. It was respondent's theory that this retinal detachment was of traumatic origin or of traumatic-degenerative origin and that the trauma resulted from his eye being struck by a particle of concrete dislodged from a concrete floor when a heavy piece of steel fell against the concrete while respondent was working close to the point where the steel struck. It was the theory of the appellant that the retinal detachment was wholly of degenerative origin and that it long antedated the occurrence to which respondent ascribed his injury. It is not disputed that at and for some time prior to the time that the condition of respondent's eye was ascertained he was and had been employed as a laborer in one of appellant's railroad yards in Sacramento, and that on the morning of September 8, 1952, his foreman had ordered him to assist in moving a number of large steel railroad car couplers, each of which weighed several hundred pounds, from a pile of the couplers which lay upon a concrete platform onto which they had been unloaded from a gondola car by means of a magnetic crane. There is substantial evidence that these couplers which had been dropped onto the concrete platform as the crane swung overhead had fallen on top of each other in disorderly fashion and that after the unloading operation they lay on the concrete in an uneven pile 3 or 4 feet in height; that they were to be moved by hand trucks to pallets and to one of the appellant's shops for use in new car construction; that respondent in doing the work assigned to him would upend the couplers one at a time in such position that they could be picked up and moved by a hand truck; that this necessitated moving not only those which lay directly upon the concrete, but also as the work progressed the moving of those which lay on top of the pile as the pile diminished; that while respondent was stooped over upending a coupler, another fell or rolled from the top of the pile and struck the concrete and that immediately respondent felt pain in his eye as from a blow; that these heavy couplers had squared shanks with squared corners and rectangular edges and that the head or

coupling end wherein was the greatest weight of steel in the mass had edges more or less sharp; that upon feeling a foreign body strike his eye and the ensuing pain therefrom respondent reported to his foreman and was sent to the company's emergency hospital where he was treated by Dr. Jones, appellant's emergency hospital physician, whose written report supports the inference that he then removed a foreign body from respondent's eye (at the trial Dr. Jones testified that when he examined respondent's eye he found no foreign body therein but found merely a small corneal stain which he believed to have been caused by some object about half the size of a pin head having struck the cornea); that on the following morning respondent complained to the foreman that his eye pained him and he was again sent to the emergency hospital; that upon this visit Dr. Jones determined that he was suffering from a retinal detachment in the right eye; that Dr. Jones caused him to go at once to San Francisco and there to enter the company's general hospital for treatment; that there Dr. Jones' diagnosis of retinal detachment was confirmed by the hospital physicians and that reparative surgery was in due time attempted; that the surgeons did not succeed in reattaching the retina; that by reason of the detachment blindness of the right eye ensued and is permanent. The verdict of the jury was for damages in the sum of $44,200. A motion was made for a new trial and the trial court denied the same, upon condition, however, that respondent submit to a reduction of the award to $25,000, which condition respondent accepted.

On appeal appellant contends that the amount of the judgment is excessive, that the judgment is not supported by the evidence in that no negligence upon appellant's part was shown to have caused respondent's injury and that the evidence is also insufficient to show that appellant's injury could be attributed to trauma in whole or in part. Complaint is also made in respect to the giving and refusing of certain instructions.

We think the jury from the evidence could reasonably infer that appellant was guilty of negligence in sending respondent to work in the way and in the place described. It was reasonably foreseeable that if a workman were engaged close to the disorderly pile of couplers in moving the couplers from the pile and upending them to be carted away by the hand truck, some of the couplers, during the operation, might

fall or roll from the pile and strike either the workman or the concrete and cause injury to him. The jury could conclude that these heavy steel objects with their irregular conformation would be beyond the capacity of one man to handle with safety when they were piled as they were. Certainly the jury could say that if one started to slip from the top of the pile the workman could do nothing to prevent its fall and since he was required to work close to the pile he could well be injured. Further, they could say that when an edged steel joist weighing as much as did these couplers struck a concrete surface particles of concrete might be projected with great speed and that it was reasonably foreseeable that such a particle could strike a destructive blow to an eyeball if it hit it. We think the haphazard high piling of these couplers upon a concrete surface, the sending of the respondent to work in moving and disturbing the couplers on the pile in close proximity to the pile, when considered in connection with the great weight of these objects, added up to negligent conduct on the part of appellant and that the evidence substantially supports the conclusion by the jury that by the falling of the coupler and the blow to appellant's eye such damage as that blow inflicted was proximately caused by that negligence.

A more serious question is presented when we come to consider the evidence relied upon by respondent to support the implied holding of the jury that the blow to appellant's eye caused the retinal detachment which eventuated in blindness in that eye. Here it is the contention of appellant that the situation calls for the application of the rule that "when the diagnosis of a physical condition depends essentially upon the knowledge, skill and experience of medical expert witnesses, and is not within the common knowledge of nonexpert laymen, the evidence of such medical experts is conclusive upon that issue." (*Guarantee Ins. Co.* v. *Industrial Acc. Com.,* 88 Cal.App.2d 410, 413 [199 P.2d 12].) We quote further from the cited case: " 'Properly analyzed, these cases merely represent specific applications of a broader rule that uncontradicted medical opinion cannot be ignored and must be followed. Competent evidence must be rebutted and overcome by competent evidence or the former controls the record. . . . When the question is one within the knowledge of experts only, their testimony is conclusive.' " (See cases cited in opinion quoted from.) We consider, however, that the evidence in this case does not reveal a situation where the rule contended for can find justifiable application. ■ To be sure, the

medical experts who testified in behalf of appellant were men of eminence in their profession and were positive in their opinion that the retinal detachment suffered by respondent was not, and could not be been, caused traumatically from the eye being struck by a flying particle, as contended by respondent. However, this is not a case where the medical testimony was all one way. There was evidence that, when somewhat over a year before the accident respondent was employed by appellant, his eyes had been examined and the acuity of his right eye found to be 20/50. While that was not keen vision, the eye was useful and far from blind. Respondent testified that he had no trouble with the sight of either eye; that he had good sight in both. There was testimony also that this condition continued up to the time of the accident and that soon thereafter he was almost totally blind in that eye from retinal detachment. Dr. Zimmerman, a witness for the respondent, testified that from such a history he would diagnose respondent's condition as a traumatic separation of the retina, and that from that history he would say the retinal detachment was at least aggravated, if not entirely caused by the accident; that it was well known that most retinal detachments are caused traumatically. There was other expert testimony that retinal detachment is often caused by trauma. We have said that the jury could have inferred that when the steel coupler hit the surface of the concrete it could have impelled a sizable piece of concrete with violence against respondent's eye; that the jury could infer that this was what happened and that the blow struck was adequate to supply the striking force which experts testified could cause retinal detachment, particularly in view of testimony that respondent had been afflicted with diabetes, one effect of which is to weaken retinal attachment and make it easier for the retina to become detached. On this point appellant seems to base a great deal on an assumption that the jury must have accepted the testimony of appellant's witnesses that nothing more than a piece of material half the size of a pin head had struck the respondent's eye. This is not so. The jury were not compelled to accept that testimony. Under these circumstances, therefore, the rule contended for by appellant can have no application. We hold the jury's implied finding that the blow to appellant's eye caused the retinal detachment which eventuated in blindness in that eye is supported by substantial evidence and must be accepted on appeal.

Appellant states its next contention as follows: "The trial court erred in permitting the jury to consider and award damages for future loss of vision of plaintiff's other or left eye." There was some testimony concerning the possible loss of vision in respondent's left eye caused by what the medical experts termed "sympathetic ophthalmia" resulting from the detriment to the right eye. Basing its request upon a claimed insufficiency of the evidence, the appellant asked the court to instruct the jury as follows: "I instruct you that you may not award damages to plaintiff for a future loss of vision in his left eye." Appellant also requested the court to instruct the jury in this way: "I instruct you that you may not award damages to plaintiff for future loss of vision in his left eye unless plaintiff proves by a preponderance of the evidence that this event is reasonably certain to occur. It is not enough that there is a remote possibility or chance that it may occur." Both instructions were refused, and the court gave the following general instruction:

"You are not permitted to award plaintiff speculative damages, by which term is meant compensation for prospective detriment which, although possible, is remote, conjectural or speculative.

"However, should you determine that the plaintiff is entitled to recover, you should compensate him for prospective detriment if it has been shown by a preponderance of the evidence that there is such a degree of probability of that detriment occurring as amounts to a reasonable certainty that it will result from the original injury."

The subject matter of the second requested instruction as stated above is clearly covered by the instruction given. ■ Prospective detriment must be so proven that from the proof the jury can reasonably conclude that the claimed detriment is reasonably certain to occur. (*Bauman* v. *San Francisco*, 42 Cal.App.2d 144, 163-165 [108 P.2d 989].) ■ But, as pointed out in the authority cited, it is generally a question for the jury to determine from the evidence whether or not the claimed prospective detriment is reasonably certain to occur. It was the contention of appellant at the trial that the evidence was not sufficient to furnish foundation for such a finding by the jury and that, therefore, it was entitled to have the court tell the jury that as a matter of law the evidence was thus insufficient. Certainly, the record is not free from doubt upon this matter. In the main re-

spondent relied upon the testimony of Dr. Zeeman, who, when asked about the matter, stated that "sympathetic Ophthalmia," although rare, could not be ruled out with respect to respondent's condition. ▮ The doctor's examination of respondent's left eye had disclosed, so he testified, a low-grade infection therein, the cause of which he did not ascertain; and he said that, considering the low-grade infection which he found there was a chance, but a remote chance, that it might result in sympathetic ophthalmia, leading to blindness of the left eye. He emphasized that the most he could say was that such a result was a possibility, although a remote one. Such testimony, although it does not measure up to the quantum of proof required for the award of damages for future detriment, was nevertheless admissible. (*Bauman* v. *San Francisco, supra,* at p. 164.) In addition to it there was a statement by one of appellant's physicians that under all the circumstances sympathetic ophthalmia affecting the left eye could not be ruled out. There was evidence also from the respondent's testimony, and from the eye tests that had been made when he sought employment, and shortly after the injury to his eye, and before the trial, that his left eye, though possessed of nearly normal visual acuity when he was employed, had progressively worsened until shortly before the trial his sight was far from normal. He testified further that he had good vision in that eye until some time after the accident. ▮ From the whole of the evidence upon the matter it cannot be said from this record as a matter of law that a finding by the jury of prospective detriment arising from the injury to the right eye would not be supported. Under the circumstances the trial judge was justified in refusing the requested instruction that would have removed this issue from the consideration of the jury, and in giving instead the general instruction which told the jury the test to which they must bring the evidence before they could make an award for such prospective detriment.

▮ Appellant further contends that the trial court erred in submitting to the jury the question of damages for future loss of earnings. The court had refused to give at appellant's request the following instruction: "I instruct you that you may not award damages to plaintiff for future loss of earning capacity unless plaintiff proves by a preponderance of the evidence that this event is reasonably certain to occur. It is not enough that there is a remote possibility or chance

that it might occur.'' While refusing this instruction, the court did tell the jury that it might award such sum ''as will compensate said plaintiff reasonably for whatever detriment, if any, he is reasonably certain to suffer in the future as a result of any loss of earning power caused by the injury in question.'' We fail to ascertain any substantial difference in the instruction requested and that given. The court in the same instruction further instructed the jury as follows: ''In fixing this amount you may consider what said plaintiff's health, physical ability and earning power were before the accident and what they are now, the nature and extent of his injuries, whether or not they are reasonably certain to be permanent, or, if not permanent, the extent of their duration, all to the end of determining the effect of his injuries upon his future earning capacity and the present value of the loss so suffered.'' We think that the court properly submitted to the jury the question of damages from future loss of earnings. Assuming that by the accident plaintiff had lost the sight of his right eye, then even though his work generally was that of a common laborer, yet it is common knowledge that such a man in that occupation will in the competition for jobs be discriminated against because his defective vision renders him less able to perform many of the tasks which fall to common labor and peculiarly expose him to the risk of industrial injury. It was proper for the court to permit the jury to consider awarding damages through loss of future earning power.

Finally, the appellant contends that the judgment is excessive. As we have stated, the verdict was originally for $44,200, which the court ordered remitted to the extent of $19,200 as a condition for the court's denial of the motion for a new trial. This condition was accepted by respondent. Trial courts exercise a wholesome control over the verdicts of juries in respect to the amount thereof and trial judges are much better fitted than are appellate justices to exercise such control. When a trial judge has reduced a verdict and it comes before the appellate tribunal with strong presumptions that control over the amount awarded by the jury has been properly exercised, the judgment so arrived at will not be reversed or reduced on appeal, unless it can be clearly said the trial court abused its discretion, thus in effect acting without the bounds thereof. (*McSweeney* v. *East Bay Transit Co.*, 60 Cal.App.2d 807 [141 P.2d 787].) We hold that this is not a proper occasion for this court to either further re-

duce or wholly reverse the judgment appealed from on the ground that it was excessive.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied May 13, 1955, and appellant's petition for a hearing by the Supreme Court was denied June 16, 1955.