[Civ. No. 2070. Fourth Appellate District.—June 16, 1939.]

## B. J. SKUPEN, Appellant, v. IMPERIAL IRRIGATION DISTRICT (a Public Corporation), Respondent.

Hickcox & Provence for Appellant.

Whitelaw & Whitelaw for Respondent.

BARNARD, P. J.—This is an action for damages alleged to have been caused by the flooding of certain lands used by the plaintiff as a duck club. It is alleged that the defendant negligently permitted waste waters from its irrigation system to flow into the Salton Sea, thereby causing the waters thereof to rise and overflow the land in question. Damages were claimed for loss of improvements installed upon the land and for loss of income during the years 1928, 1929 and 1930. The court fixed the amount of plaintiff's damage at $1,000 and entered judgment accordingly. Findings were waived, and the plaintiff has appealed on the sole ground that the amount allowed is inadequate and not sustained by the evidence.

The appellant relies on evidence to the following effect. In 1925 he constructed certain dikes at a cost of $6,000, and also installed certain duck blinds and tanks costing $1300. In order to bring in fresh water for the duck ponds he built two miles of ditch at an expense of $305. His business increased during 1926 and 1927. In 1927 he had 337 members in his club at an annual fee of $10 each, and made an additional charge for tank shooting and for meals and lodging. Outsiders were given shooting privileges at $7 per day. In 1927 the number of hunters averaged about fifty a week. There was a continual dropping off in this number during the years 1928, 1929 and 1930. His gross income was $900 in 1928, $750 in 1929 and $400 in 1930. It cost him about $1600 to operate during the years 1928 and 1929. The waters of the

Salton Sea overflowed the land in 1928, destroying the dikes and other improvements.

It is argued that the appellant was damaged in the amount spent for improvements and also that, taking into consideration the membership fees and charges for other accommodations, "it would be reasonable to estimate that the plaintiff's gross income during 1927 would have been at least $5,000" and that since another man who ran a similar club grossed about $5,000 a year up to and including 1930, it is reasonable to estimate that the appellant's annual gross "would have averaged around $4,000", and that his net income would have been $2,400 a year for the three-year period.

With respect to the loss of income it is attempted to compare the receipts before and after the flooding of the land. While the appellant estimated his gross income in 1927 as $5,000, there is no evidence of his cost of operation in that year. Although an estimate was made as to the cost of operation in subsequent years the appellant admitted that he had commingled funds from this and other places, and there is no evidence from which the cost of operation of this particular enterprise may be determined for any year. There is also evidence that after 1927 the duck season was cut to three days a week, which materially affected the revenue of all such duck clubs, and that during the years 1928, 1929 and 1930 there was a big decrease in the number of ducks in that territory. While, under well-settled rules, prospective income from an established business may be a proper element of damage considerably more certainty in the character of the proof is required than here appears.

There is both a conflict in the evidence and a failure of proof with respect to the value of the improvements claimed to have been destroyed, and as to whether any damage thereto was caused by the acts of the respondent. While the appellant testified that the dikes cost $6,000 in 1925, there is also evidence that they could have been constructed for $240, and there is no evidence as to what they were worth in 1928 when the damage is supposed to have been done. There is no evidence as to what the duck blinds and tanks were worth in 1928, and there is evidence that such blinds and tanks were good only for one season. Although both sides agree that fresh water was necessary for the duck ponds, there is evidence that the ditch which appellant constructed to bring it

in was allowed to become filled, was unusable, and that there was no way to get water through it after 1927. There was further evidence to the effect that such dikes as those in question would disintegrate and become worthless in one or two years unless they were kept up, and that the appellant did no work on them after they were constructed in 1925. There is also evidence that not more than one-third of the water coming into the Salton Sea during these years came from the respondent's ditches. A part of the evidence would justify the inference that very little of any loss suffered by the appellant occurred as a result of the acts of the respondent.

█ It is conceded that the measure of damages here is the amount which will compensate for all the detriment proximately caused by the acts of the respondent. (Civ. Code, sec. 3333.) As in other tort actions, considerable discretion in fixing the amount of damages rests with the court or jury. In view of the conflicting evidence, the absence of evidence in certain respects, and the indefinite and unsatisfactory nature of the evidence in other respects, it cannot be held that an abuse of this discretion here appears. While a more serious question would have been presented had the respondent appealed, the appellant cannot complain if the amount awarded him is more than finds actual support in the evidence.

The judgment is affirmed.

Marks, J., concurred.