[Civ. No. 11931. First Dist., Div. One. May 27, 1942.]

M. J. POWER et al., Respondents, v. CALIFORNIA STREET CABLE RAILROAD COMPANY (a Corporation), Appellant.

290

Henry Heidelberg and Theodore Tamba for Appellant.

George H. Hauerken for Respondents.

KNIGHT, J.—The defendant California Street Cable Railroad Company appeals from a judgment entered on verdict of a jury, in favor of the plaintiffs, M. J. and May Dickson Power, husband and wife, in an action to recover damages for personal injuries sustained by Mrs. Power while riding as a passenger on a cable car belonging to and operated by the defendant company.

The accident happened September 9, 1940, at the corner of Jones and O'Farrell Streets in San Francisco, wherein more than forty other passengers were injured. At the opening of the trial the company admitted liability for the accident; thus the sole issue presented for determination was the amount of damages, and the jury returned a verdict for $7,100. The company concedes that "a fair and adequate award for dam-

ages in this case should be approximately five thousand ($5,000.00) dollars,'' but contends that $7,100 is excessive, and accordingly that the amount of the award should be reduced to such an amount as to this court may seem reasonable to compensate plaintiffs for the damages sustained. █

The rule is, however, that even though the award is larger than a reviewing court might think justified, such court is not in a position to disturb it unless. it appears that the verdict was the result of passion, prejudice or corruption, or that the amount is so grossly excessive that the ends of justice warrant a reduction (*Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal. App. (2d) 674 [102 P. (2d) 422, 104 P. (2d) 26]), and there is no reasonable ground upon which it may be so held in the present case.

The company introduced no evidence whatever in the case, but rested on that produced by plaintiffs. It was established thereby that the total amount of special damages alone sustained by plaintiffs was $1,595.70, thus leaving less than $5,505 as compensation for the personal injuries sustained and pain suffered by Mrs. Power, and as damages to her husband for loss of his wife's services. The particular items of special damages were as follows: Mrs. Power was employed at Hale Bros. at $33.60 a week, and lost twenty-three weeks' pay, or $772.80. Her doctor bill was $253.50; hospital bill $162.40; trained nurses at the hospital (she had three special nurses up to September 16th and one until she went home September 29th), $196; she agreed to pay a friend who had nursing experience and who took care of her for six weeks after she came home from the hospital $25 a week, or $150; it was necessary for her to get new glasses, which cost $50; and the ambulance fees were $11.

█ As a result of the accident Mrs. Power sustained a severe brain injury with a possible basal fracture of the skull. She was thrown from the car and rendered unconscious, but regained consciousness sufficiently to be taken home in a taxicab—she lived only a few blocks away from the scene of the accident. She was assisted into her home by the cab driver, and immediately lapsed into unconsciousness again. Her husband called a brain specialist, who found Mrs. Power had a cut on the back of her head, a black and blue area in the front of her head on the right side; she was suffering from severe shock and given to persistent vomiting, and complained of severe pains in her head. She had definite changes in the

reflexes, in that they were greater on the right side than on the left. She was removed immediately to the hospital, where she was given sedatives. The vomiting continued for about four days, and it was necessary to give her fluids by injection into the veins. Her reflexes altered, so that they were stronger on the left side; she developed a weakness in the face on the left side; she could not move her eyes to the right and she had an unsteadiness of her eyes; her sense of taste and smell was impaired. These symptoms were diagnosed as indicating a brain injury, which was confirmed by a spinal puncture made to determine the pressure and character of the fluid in the brain, and the fluid was found to be practically pure blood, which was evidence of bleeding inside the head, and it was twice the normal pressure, indicating pressure within the head caused by hemorrhage. About a week later another spinal puncture was made, which showed the fluid had cleared somewhat and the pressure was lowered. She also developed a black and blue area back of the ear, which is called "Battle's sign," and is presumptive evidence of a basal fracture of the skull; and although the X-rays did not show any fracture, the doctor testified it is not always possible to show such a fracture by X-rays. She remained in the hospital until September 29, then was allowed to go home but was kept in bed for eight or ten days more, and later allowed to sit up and gradually to get up. It was necessary for someone to take care of her for six weeks after she came home from the hospital, and she remained home until February 15, 1941. At the time of trial she was still suffering from severe pains in her head, from dizziness, fatigue, sleeplessness, and disturbance in the sense of smell and taste. The doctor testified that within approximately a year after the accident she might be free of these symptoms.

In support of its contention that the amount awarded by the jury was excessive, the company contends that no permanent injuries were received; but even so, it would seem that the injuries above enumerated were sufficiently severe and painful to preclude this court from holding as a matter of law that the amount the jury awarded was excessive.

Furthermore and by way of comparison the company calls attention to verdicts rendered in numerous other cases. ■ It is well settled, however, that there is no absolute rule for determining whether a verdict is excessive (*Morgan* v. *Southern Pacific Co.*, 95 Cal. 501 [30 Pac. 601]), and while in passing upon the question the reviewing court may consider amounts

awarded in similar cases involving equally serious injuries (*Osrowitz* v. *Market Investment Co.*, 40 Cal. App. (2d) 179 [104 P. (2d) 681]), in the final analysis the question in each case must be determined from its own peculiar facts and circumstances (*Kirschbaum* v. *McCarthy*, 5 Cal. (2d) 191 [54 P. (2d) 8]), and it cannot be held as a matter of law that a verdict is excessive simply because the amount may be larger than is allowed ordinarily in such cases. (*James* v. *Oakland Traction Co.*, 10 Cal. App. 785 [103 Pac. 1082]; see, also, *Barrett* v. *Harmon*, 115 Cal. App. 283 [1 P. (2d) 458].)

For the reasons stated it is our opinion that no legal ground has been shown for interference with the amount of the jury's award. The judgment is therefore affirmed.

Peters, P. J., and Ward, J., concurred.